The STATE of Ohio, Appellant,

v.

BROWN, Appellee.

[Cite as *State v. Brown* (1995), 101 Ohio App.3d 227.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14750.

Decided Feb. 17, 1995.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Carley J. Ingram,* Assistant Prosecuting Attorney, for appellant.

*Michael K. Murry,* for appellee.

WOLFF, Judge.

The state of Ohio appeals from the Montgomery County Common Pleas Court's judgment which granted Joe Brown's motion to suppress evidence obtained in a search of his place of business pursuant to a search warrant issued May 25, 1994.

The following is a statement of the facts included in the affidavit which was submitted to a Dayton Municipal Court judge in support of the request for a search warrant.

On May 15, 1993, the vice unit of the Dayton Police Department received a "complaint information memo" from the dispatcher containing the following information. A "citizen" had called to report illegal gambling at Joe & Margaret's Diner. Brown operated the diner. The citizen reported that "video gambling machines" were in the back room of the restaurant. The citizen explained that Brown paid special customers for their points, despite the presence of signs which read "For Amusement Only No Gambling."

On January 15, 1994, a detective in the vice unit received a call from a "concerned citizen" who reported that Brown had video gambling machines in the rear area of the restaurant. The detective was assigned to investigate this complaint, but no machines were located. On May 18, 1994, the detective received another call from the same citizen who again reported the presence of the video gambling machines.

On May 24, 1994, the detective and a partner went into the diner. Located in plain view in the front of the restaurant was a "Lucky 8 Line" video slot gambling machine. Signs were posted which said "amusement only no gambling." The detective played the video slot gambling machine by inserting $20, receiving two hundred credits, and placing bets with the credits. No skill was involved in playing the game; it was purely a game of chance. The detective lost all of his credits within a few minutes.

The detective asked a waitress if "Joe" was in, claiming that Joe owed him money. When the waitress said that Joe was not in, the detective told her that "the machine took all of his money." His partner said that the detective should not have played that machine, and he asked the waitress if the machines in the back were on. She replied that they should be, and she told them that they could play the games in the back since they knew Joe.

The detective and his partner went to the back of the diner and found three video slot gambling machines which were not turned on. They asked a cook about the machines, and she told them how to turn them on. They inserted money and played, and they quickly lost all of their credits. Subsequently, they left the diner.

The affidavit in support of the request for a search warrant also informed the municipal judge that Brown had been arrested on July 10, 1991, after a search of the diner had resulted in the recovery of money and video gambling machines. Brown had been charged with engaging in corrupt activity. On September 11, 1991, he pled guilty to reduced charges of operating a gambling house and gambling and was placed on probation.

Based on the information in the affidavit, the municipal judge determined that there was probable cause to believe that the offenses of gambling and operating a gambling house had been committed and that property connected to the commission of those crimes could be found at the diner. Therefore, the municipal judge issued a search warrant.

Subsequently, the police department executed the search warrant. Brown was indicted on a charge of permitting his premises to be used for gambling in violation of R.C. 2915.02. Brown filed a motion to suppress the evidence obtained in the search of the diner. He argued that the facts alleged in the affidavit were insufficient to support a finding of probable cause. The common pleas judge held a hearing on the motion and granted the motion.

The state filed a notice of appeal in the common pleas court, pursuant to R.C. 2945.67(A) and Crim.R. 12(J). The state properly certified that the appeal was not taken for purposes of delay and that the suppression of the state's evidence rendered effective prosecution impossible. The state asserts a single assignment of error.

"The trial court erred in suppressing the evidence that the police seized pursuant to a search warrant."

The state contends that the common pleas judge erred in suppressing the evidence seized pursuant to the search warrant. The common pleas judge stated in his decision that the warrant was issued without probable cause to believe gambling was conducted in the diner. The state argues that the common pleas judge failed to give the appropriate amount of deference to the municipal judge's determination that there was probable cause to issue the search warrant.

■ The United States Supreme Court has instructed magistrates and judges who issue search warrants to consider the totality of the circumstances in determining whether there is probable cause to believe that evidence of a crime exists in a particular place. *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The Supreme Court of Ohio adopted this holding in *State v. George* (1989), 45 Ohio St.3d 325,

544 N.E.2d 640, paragraph one of the syllabus. Thus, there is no specific formula to determine when probable cause exists; rather, the issuing judge must make his determination based upon "the factual and practical considerations of every-day life on which reasonable and prudent men, not legal technicians, act." *Massachusetts v. Upton* (1984), 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721, 726.

The Ohio Supreme Court also adopted the standard of review defined by the United States Supreme Court for reviewing a magistrate's or judge's determination that probable cause did exist to issue a search warrant. *George, supra,* paragraph two of the syllabus, following *Gates, supra.* Paragraph two of the syllabus in *George* states:

"In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither the trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, *trial and appellate courts should accord great deference to the magistrate's determination of probable cause,* and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." (Emphasis added.)

■ Thus, this court and the common pleas court apply the same standard to review the municipal judge's determination that the affidavit filed in support of the search warrant stated probable cause. See *Gates, supra,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. A reviewing court, either at the trial or the appellate level, must determine whether the affidavit provided a *substantial basis* for the magistrate's conclusion that there was a *fair probability* that evidence of a crime would be found at the place to be searched. *Id.;* see, also, *State v. Mills* (1992), 62 Ohio St.3d 357, 367, 582 N.E.2d 972, 982–983.

■ As indicated in the statement of facts, the affidavit supporting the search warrant referred to tips received from a "concerned citizen." At the evidentiary hearing requested by Brown, reference was made to a "reliable informant." At the conclusion of the hearing, the common pleas judge engaged in the following dialogue with the state:

"The Court: Would the counsel for the State of Ohio please point out in the warrant, the affidavit, where there's anything about any reliable confidential informants. .

"Prosecutor: I believe the reference is to the concerned citizen who made a phone call in May.

"The Court: We don't even know who that is do we?

"Prosecutor: No.

"The Court: Somebody harassing Joe Brown? Wants to get him into trouble? Not very reliable. Not very confidential. We don't even know who he is.

"The Court is going to sustain the motion to—there's no probable cause here. There's a lot of assertions that—all we have—the best thing we have is machines in the corner that we can plug in and they have buttons on them.

"And then we have some complaining citizens that we don't know who they were. We have no idea whether this [is] the priest or the local drunk making complaints.

"Just won't fly. I don't think there's any probable cause. Search warrant should not have been issued."

The common pleas court's written decision granting Brown's motion to suppress stated that "[a]fter hearing the evidence and reading the affidavit for search warrant, the Court concludes that * * * the warrant was issued without probable cause to believe that gambling was conducted on the premises."

From the common pleas judge's written decision and his oral ruling at the hearing, it appears that he substituted his judgment for that of the municipal judge. *George, supra.* At no point does the common pleas judge expressly consider whether there was a substantial basis for the municipal judge to conclude that there was a fair probability that evidence of gambling would be found at the diner. *Id.*

Applying the deferential standard of review mandated by the Supreme Court of Ohio, we conclude that the affidavit contained a substantial basis for the municipal judge to conclude that probable cause existed. It is not clear from the affidavit whether the affiant knew the identity of the "concerned citizen." While a tip from an anonymous citizen is not entitled to much weight, the affidavit also revealed that the detectives' investigation substantially corroborated the tip. See *Gates, supra,* 462 U.S. at 237–238, 103 S.Ct. at 2331–2332, 76 L.Ed.2d at 547–548.

On May 18, 1994, the "concerned citizen" informed the detectives that he had seen video gambling machines in Brown's diner. On May 24, 1994, the detectives investigated the tip and saw such machines in the diner, and the next day they applied for the search warrant. Further, a citizen had reported that Brown was paying customers for their credits on the machines. The waitress's statement, as reported in the affidavit, that the detectives could play the machines in the back since they knew Joe raised an inference of an effort to conceal illicit activities.

Finally, the affidavit revealed that Brown had been convicted of a gambling offense in 1991, after video gambling machines had been found in his diner.

While the information in the affidavit may not have made the most compelling case possible that gambling was occurring in the diner, at a minimum it presented enough information to place this case in the category of "doubtful or marginal cases" which should be "resolved in favor of upholding the warrant." *George, supra*, 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph two of the syllabus. Despite the fact that the common pleas judge may not have issued the warrant if the affidavit had been presented to him in the first instance, when reviewing the probable cause determination after the fact, the common pleas judge must accord the municipal judge the "great deference" to which he is entitled. The affidavit contained sufficient information to provide a substantial basis for the municipal judge's determination that there was a fair probability that evidence of gambling would be found in the diner.

Therefore, the trial court erred in determining that probable cause did not exist for the warrant, and it erred in suppressing the evidence seized during the execution of the warrant. Accordingly, the assignment of error is sustained.

The judgment of the common pleas court will be reversed, and the matter will be remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J. and GRADY, J., concur.